The B. F. GOODRICH COMPANY et al., Petitioners,

v.

DEPARTMENT OF TRANSPORTATION et al., Respondents.

No. 78–3392.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1978.

Decided Feb. 8, 1979.

Patrick F. McCartan, Jones, Day, Reavis & Pogue, John L. Straugh, Cleveland, Ohio, for petitioners; Charles D. McCarty, Akron, Ohio (B. F. Goodrich Co.); Thomas D. Caine, Akron, Ohio (Goodyear Tire & Rubber Co.); J. Alec Reinhardt, Findlay, Ohio (Cooper Tire & Rubber Co.); William J. Henrick, Akron, Ohio (General Tire & Rubber); Joseph E. Downs, Akron, Ohio (Firestone Tire & Rubber); Ezra K. Bryan, Cleveland, Ohio, William M. Kochheiser, Mansfield, Ohio (Mansfield Tire & Rubber); Myron Kalish, New York City (Uniroyal, Inc.); John Barclay, New Haven, Conn. (Armstrong Rubber Co.)

Joseph J. Levin, Jr., Chief Counsel, David W. Allen, Asst. Chief Counsel, Enid Rubenstein, Allan J. Kam, National Highway Traffic Safety Administration, Dept. of Transp., Robert E. Kopp, Ronald R. Glancz, U. S. Dept. of Justice, Civil Div., Appellate Section, Washington, D. C., for respondents.

Before EDWARDS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

EDWARDS, Chief Judge.

Petitioner, Goodrich, and other members of the tire industry, again attack the Uniform Tire Quality Grading Regulation issued by the National Highway Traffic Safety Administration following the affirmance, with two exceptions, of those regulations by this court in *Goodrich v. Department of Transportation*, 541 F.2d 1178 (6th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 773 (1977). In *Goodrich I* we pointed out that after years of consideration, in 1966 the Congress adopted and the President approved a bill, the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381 *et seq.* (1976) (which is yet to be implemented) requiring the grading and labeling of bias belted and bias ply tires and radial ply tires. Since our decision and Supreme Court denial of certiorari, the Agency has completed its regulation, except as to radial tires, and allowed full industry comment. The regulation requires the grading of all tires for three performance qualities: tread wear, traction, and temperature resistance. It requires that this information be molded into the tire sidewalls, printed on paper labels affixed to the treads, and kept available in writing by the tire dealers. Thus far, however, no effective date for implementing the regulation as to radial tires has been set.

The three issues remanded by this court in its 1976 opinion concerned: 1) the fact that the regulation as adopted failed to warn of the necessity of proper loading and proper inflation in grading temperature resistance and that in grading traction, the proposed label did not warn that lateral traction was not covered; 2) the failure to establish the adequacy and accuracy of the course monitoring tire selected for testing radial tires; and 3) failure to allow industry comment upon the course monitoring tires chosen for testing bias and bias belted tires.

On this appeal no issue is presented as to paper label warnings.

As to the second issue referred to above, the Agency concedes that it has had continuing difficulty in determining the wear rate for course monitoring tires for testing radial tires, since "[r]ecent Agency tests and analysis indicate that the wear rate of the tested radial tires is not constant over the distance traveled for the total tread life of the tires." 42 Fed.Reg. 10,320 (1977).

As to this issue, the Agency then said:

In Notice 22, the agency stated that the data appeared to indicate that the wear rate for some radial tires may not be constant. The NHTSA concluded, therefore, that radials would not be included for the time being under the UTQG rule, since computations made under that rule contemplates a constant adjusted wear rate for projection purposes. Industry commenters objected to this treatment of radials and argued that the agency should not proceed with any of the grading requirements unless it proceeds with them all simultaneously.

These commenters cited the *B. F. Goodrich* case which remanded the course monitoring tire issue to the agency, because a selection of all of CMT's had not been made prior to the establishment of an effective date for the implementation of the rule to all tire types. The commenters interpreted this court mandate to mean that the agency was required to proceed with the promulgation of grading requirements for all three tire types concurrently. The agency does not interpret the court decision in that manner.

The Sixth Circuit Court remanded to the agency the issue of the selection of the CMT's. It should be noted that at the time of the court decision the agency had not selected the bias and bias-belted CMT's even though it had established the effective dates for all tire types. Moreover, the court noted that the selection of the radial CMT had been based upon a

series of tests (reported in NHTSA Technical Note T–1014) which were flawed by a problem not clearly identified or explained. The court's conclusion, therefore, was that it was inappropriate to schedule the effective date for compliance of tires with UTQG when the NHTSA had not given notice and invited comment on its selection of the CMT's. This mandate of the court does not prohibit the promulgation of the rule in phases, however.

The court's opinion stated that it would be inappropriate to require grading of a tire when all of the procedures (in this case the CMT selection) had not been chosen, and commented upon, for that tire. The court did not, in the opinion of the NHTSA, state that the agency could not proceed with rulemaking on some tire types pending further study of the application of the rule to another tire type. Therefore, the agency does not find merit in the position of the commenters who allege that the agency must proceed with a rule for all tire types at the same time.

The agency has responded to the remand in Notice 22 by announcing the selection of all CMT's. That notice gave the industry adequate time to comment upon the agency's selections. However, until possible problems concerning the testing of radials are resolved, the agency will not set an effective date for the application of the rule to radial tires. As long as an effective date applicable to the grading of radials is not established prior to the establishment of grading procedures for that tire, the NHTSA can implement the rule with respect to the other tire types and is not in violation of the court's remand.

43 Fed.Reg. 30,542, 30,545 (1978).

The quotation above from Notice 24 serves to eliminate any issue concerning radial tires from this appeal pending definitive agency action.[1] But it also leads to our consideration of the first three of appellants' stated issues which are quoted in full below:[2]

1. Whether, in promulgating the Tire Quality Grading Regulation, the National Highway Traffic Safety Administration complied with the National Traffic and Motor Vehicle Safety Act and with this Court's decision and mandate in *B. F. Goodrich Co. v. Department of Transportation*, 541 F.2d 1178 (6th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 773 (1977), when, upon remand, the NHTSA admitted, contrary to its own express representations to this Court in *Goodrich*, that the wear rate for radial tires is not a constant rate and therefore issued a revised regulation which failed to provide a system for grading all three types of passenger car tires?

2. Whether the National Highway Traffic Safety Administration has complied with this Court's requirement that it demonstrate that all three types of course monitoring tires which are to be used in testing under the Tire Quality Grading Regulation have been tested with results which meet the approved standard of a coefficient of variation below five percent when such tires are tested in accordance with the Regulation, when the NHTSA, in order to claim that it has met this standard, has, contrary to this Court's ruling in *Goodrich*, admittedly thrown out portions of its own test data before making its calculations of variability?

3. Whether the course monitoring tires designated to be used as test devices under the Tire Quality Grading Regula-

---

1. We note, however, that several weeks prior to oral argument the National Highway Traffic Safety Administration issued Notice 28, which stated:

Notwithstanding this apparent deviation in wear rate pattern, the data indicate that a wear-out point for radial CMT's can be accurately predicted, thereby allowing the estab-

lishment of a base course wear rate (BCWR) to be used in the adjustment of candidate tire wear rates.

43 Fed.Reg. 51,735 (1978).

2. We do not by quoting these issues as stated approve the inclusion therein of argument which clearly should have been reserved for the body of the brief.

tion meet this Court's criteria for homogeneity and provide "reasonably fair and reasonably reliable" test procedures mandated by this Court in *Goodrich*, when uncontradicted test data in the docket show that the course monitoring tires are so variable that they achieve grades which vary as much as ten grades one from the other when graded in accordance with the Regulation?

Careful consideration of these issues on the briefs and record presented leads to denial of this petition for review. Petitioner is in error in reading our opinion in *Goodrich I, supra,* as requiring that all grading regulations for all three types of tires must be completed before any portion of the regulation could go into effect. The sentence in our opinion relied on by appellants is as follows:

> While we recognize that course monitoring tires (like the yardstick) cannot be perfectly accurate, we believe the industry is entitled to know that all three of the course monitoring tires have been tested with results which meet the agency's own standards—standards which we have approved above.

*Goodrich I, supra* at 1189.

■ Petitioners' brief contends that this court's intention by use of this language was to prevent any portion of the regulation authorized by statute going into effect until the entire regulation was adopted. If we had thought we had reason (and power) [3] to add such a restriction, and that it was consistent with the statute to do so, we surely would have employed language clearly spelling out such an extraordinary command. The sentence as drafted does not contain any reference to the setting of a single effective date for the Agency's exercise simultaneously of all of the powers committed to it by Congress. Read in the context of the total opinion, which deplores the Agency's delay in making the statute effective, no such interpretation can reasonably be deduced. We, and the industry, might well have anticipated that grade regulation of all types of tires would be initiated at the same time. We cannot, however, on this record hold that the Agency's failure to do so because of its inability to validate its contemplated radial tire test was arbitrary and capricious. Administrative Procedures Act, 5 U.S.C. § 553 (1976) and 5 U.S.C. § 706(2)(A) (1976).

■ We also believe that the Agency's regulation would satisfy the terms of § 103 of the National Traffic and Motor Safety Act, 15 U.S.C. § 1392(a) (1976) if this section were deemed applicable.

We have also reviewed petitioners' contentions concerning their claims that the course monitoring tires chosen by the Agency for testing bias and bias-belted tires fail to meet the Agency's own declared standards and that test results show such variability as to defeat the Agency's contemplated grading system. To the extent that petitioners are arguing the inherent unreliability of employing course monitoring tires, the law of the case requires rejection of their argument. After careful review this court rejected those arguments in *Goodrich I, supra* at 1189–90.

■ We realize that petitioners rely upon statistical analysis by their own chosen expert witnesses to argue that the Agency's own tests show that the chosen course monitoring tires had a coefficient of variability in excess of the Agency standard of 5%. The experts relied upon by the Agency, however, reached contrary conclusions. We cannot appropriately hold on this record that such agency reliance is arbitrary and capricious or in violation of the statute.

We have reviewed the fourth of petitioners' stated issues and found it to be without merit.

We affirm the validity of the regulation as presented in this case and dismiss the petition for review.

---

**3.** *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 419, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1978).